IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JESSICA R. HAMLIN, <br><br> Plaintiff, <br><br> vs. <br><br> MICHELLE A. KING, Acting Commissioner of SSA; <br><br> Defendant. | 4:24CV3031 <br><br> MEMORANDUM AND ORDER |

This matter is before the Court on Plaintiff's motion for judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The plaintiff, Jessica Hamlin ("Hamlin"), appeals a final determination of the Commissioner denying her application for Supplemental Security Income Benefits under the Social Security Act. Filing No. 1 and Filing No. 16. Hamlin asks the Court for a remand for further reconsideration. The Commissioner seeks an order affirming the decision. Filing No. 18. The Court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c).

Hamlin protectively filed for Supplemental Security Income on January 10, 2021. Filing No. 11-2 at 16. She was initially denied on May 5, 2021, and denied on reconsideration on July 28, 2022. *Id.* Hamlin filed a request for a hearing by ALJ on August 2, 2022. *Id.* The administrative hearing took place on December 13, 2022. *Id.* Thereafter, the ALJ issued an Unfavorable Decision on January 25, 2023. *Id.* at 13.

At the time of the filing, Hamlin had not graduated from high school. It appears she was trying to obtain her G.E.D. Further, she has no relevant work experience, as she apparently has never had a job.

1

## ALJ FINDINGS

The ALJ concluded that Hamlin had severe impairments of obesity, depressive disorder, anxiety with panic disorder, attention deficit-hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), and substance abuse. Filing No. 11-2 at 18. The ALJ found Hamlin could perform the following RFC:

> [A] full range of work at all exertional levels but with the following nonexertional limitations: the claimant can occasionally climb ladders, ropes and scaffolds; and can frequently climb ramps and stairs, stoop, kneel, crouch, crawl, and balance as defined by the SCO.  The claimant can occasionally work at unprotected heights or with moving mechanical parts.  The claimant is able to apply common sense understanding to carry out detailed, but uninvolved instructions in the performance of simple, routine and repetitive tasks in a work environment with no fast-paced production requirements involving only simple, work-related decisions and with only occasional judgment and workplace changes.  The claimant can occasionally respond to and have interaction with supervisors, coworkers and the general public.

Filing No. 11-2 at 21.

## MEDICAL EVIDENCE

On August 26, 2019, Hamlin had a diagnostic assessment with Simon Joseph, L.M.S.W., at Valeo Behavioral Health ("Valeo"). Filing No. 12-1 at 315. She requested medication services and indicated she had symptoms including insomnia, nightmares, night terrors, visual hallucinations, anxiety, poor concentration, and impaired recent/remote memory. *Id*. at 316–22. On December 12, 2019, Hamlin returned to Valeo stating that her "core services officer, drug counselor, and therapist think I need to be on meds." *Id*. at 347. She reported a history of depression and anxiety dating back to childhood, and current nightmares, poor concentration/focus, and trauma. *Id*. Hamlin was prescribed prazosin and hydroxyzine. *Id*.

On December 23, 2020, Hamlin met with Amber Johnson, A.P.R.N.  Hamlin reported her depression was a 5/10, her anxiety was a 10/10, and she had poor concentration/focus,

delusion, anxiety, and irritability. Filing No. 12-1 at 424, 426. APRN Johnson diagnosed major depressive disorder, recurrent episode, with psychotic features and prescribed Zoloft, prazosin, Buspar, and Seroquel, which is what she had been taking previously. *Id*. at 427.

Hamlin presented to First Step Rehabilitation Services on January 5, 2021, for addiction treatment. Filing No. 12-1 at 301. Hamlin saw Kerri Moore, A.P.R.N., and reported increased anxiety and diminished concentration and focus. *Id*. at 433. Her mood was anxious, and APRN Moore prescribed a trial of Trazodone and increased her dosage of Buspar. *Id*. at 435.

Hamlin went to Crosswinds Counseling and Wellness ("Crosswinds") on March 2, 2021, and reported she was a recovering addict with "a lot of unresolved issues." Filing No. 12-1 at 363. She reported past self-harm and exhibited insomnia, poor concentration, and poor memory. *Id*. at 369–71. Hamlin indicated she had fluctuating anxiety, sleep issues, nightmares, and depression. *Id*. at 445. Dr. Ekeanya increased Hamlin's dosage of Zoloft and Trazodone, started a prescription of Topamax, and continued her prescriptions of Buspar and Prazosin. *Id*. at 447.

On July 1, 2021, Hamlin returned to Dr. Ekeanya with increased anxiety and depression, and cuts on her body. Filing No. 12-1 at 470. Her mood was anxious, and she had experienced episodes of dissociation. *Id*. at 471. Dr. Ekeanya increased Hamlin's dosage of Topamax, stopped her prescription of Trazodone, and started a prescription of Temazepam for sleep. *Id*. at 472. Hamlin reported nightmares to Dr. Ekeanya on September 15, 2021. *Id*. at 467. Dr. Ekeanya noted Hamlin had a dysphoric and anxious mood and was very tearful. *Id*. at 468. She increased Hamlin's dosage of Buspar and Prazosin. *Id*. at 469.

On November 5, 2021, Hamlin established care with Vandan Panchal, M.D., and was prescribed a trial of Adderall for ADHD. Filing No. 15-1 at 170–71. Dr. Panchal recommended

3

she switch her medications to the morning because she was not sleeping well and prescribed Trazodone as a better alternative for her sleep issues. *Id*. at 164. Hamlin reported to Dr. Panchal that she was doing better but dealing with multiple mood swings. *Id*. at 158. Dr. Panchal increased her dosage of Buspar for her anxiety and depression, prescribed a trial of long-acting Adderall, discontinued her prescription of Restoril, and prescribed Xanax as needed for severe panic attacks. *Id*. at 159.

On November 1, 2022, Dr. Panchal completed a Medical Source Statement – Mental ("MSSM"). Filing No. 15-1 at 235–36. He opined that Hamlin would miss work four days per month and would be off task 25% or more during the workday. *Id*. at 235. Dr. Panchal also opined that Hamlin had moderate to marked limitations in understanding and memory, mild limitations for ability to carry out short simple instructions, extreme limitations to perform with a schedule and maintain regular punctual work attendance, moderate and markedly limited concentration and persistence otherwise, moderate to extreme limitations in social interaction, and mild to moderate limitations in adaptation. *Id*. at 235–36. At the hearing before the ALJ, Hamlin testified that she had anxiety and could not be around others. Hamlin also indicated that she had these issues since she was a young child and had experienced substantial childhood trauma. She testified she could not remember things, and her spouse had to help her remember doctor appointments and medications. She further testified that she was clean and sober and trying to get her children back.

**LAW**

A. *Standard of Review*

Under 42 U.S.C. § 405(g), a reviewing court in a social security case may enter "a judgment affirming, modifying, or reversing the decision [of the Commissioner], with or without remanding the case for rehearing." This procedure, known as a sentence four remand, is

appropriate when additional proceedings before the agency are needed. See *Sullivan v. Finkelstein*, 496 U.S. 617, 625–26 (1990).

When reviewing a Social Security Disability benefits decision, the district court does not act as a factfinder or substitute its judgment for the judgment of the ALJ or the Commissioner. See *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995) (citing *Loving v. Dep't of Health & Hum. Servs., Sec'y*, 16 F.3d 967, 969 (8th Cir. 1994)). The court's review is limited to an inquiry into whether there is substantial evidence on the record to support the findings of the ALJ and whether the ALJ applied the correct legal standards. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011); *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). Substantial evidence equates to something less than a preponderance of the evidence, but more than a mere scintilla; such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003)); *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

However, this "review is more than a search of the record for evidence supporting the [Commissioner's] findings," and "requires a scrutinizing analysis." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008) (quoting *Hunt v. Massanari*, 250 F.3d 622, 623 (8th Cir. 2001); *Cooper v. Sec'y of Health & Hum. Servs.*, 919 F.2d 1317, 1320 (8th Cir. 1990)). In determining whether there is substantial evidence to support the Commissioner's decision, the court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

B.  <u>Sequential Analysis</u>

The Social Security Administration has promulgated a sequential process to determine whether a claimant qualifies for disability benefits. See 20 C.F.R. § 404.1520(a)(4). The

determination involves a step-by-step analysis of the claimant's current work activity, the severity of the claimant's impairments, the claimant's RFC and his or her age, education, and work experience. *Id.* At step one, the claimant has the burden to establish that he or she has not engaged in substantial gainful activity since his or her alleged disability onset date. *Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998). At step two, the claimant has the burden to prove he or she has a severe medically determinable physical or mental impairment or combination of impairments that significantly limits his or her physical or mental ability to perform basic work activities. *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013).

At step three, "[i]f the claimant suffers from an impairment that is listed in [20 C.F.R. § 404.1520(a)] the Listings or is equal to such a listed impairment, the claimant will be determined disabled without considering age, education, or work experience." *Flanery v. Chater*, 112 F.3d 346, 349 (8th Cir. 1997); **see also** *Braswell v. Heckler*, 733 F.2d 531, 533 (8th Cir. 1984). "The Listings" stipulate the criteria for each impairment that is considered presumptively disabling. 20 C.F.R. Part 404, Subpart P, App. 1 § 11.03. If the claimant does not meet the listing requirements, the ALJ will instead determine the claimant's residual function capacity ("RFC"), which the ALJ uses at steps four and five. 20 C.F.R. § 404.1520(a)(4).

A claimant's RFC is what he or she can do despite the limitations caused by any mental or physical impairments. *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014); 20 C.F.R. § 404.1545(a). The ALJ is required to determine a claimant's RFC based on all relevant evidence, including medical history, opinions of treating physicians and specialty physicians, and the claimant's own descriptions of his or her limitations. *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015). "The RFC must (1) give appropriate consideration to all of [the claimant's] impairments, and (2) be based on competent medical evidence establishing the

physical and mental activity that the claimant can perform in a work setting." *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016) (quoting *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011)).

At step four, the claimant has the burden to prove he or she lacks the RFC to perform his or her past relevant work. *Cuthrell*, 702 F.3d at 1116. If the claimant can still do his or her past relevant work, he or she will be found not disabled; otherwise, at step five, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and work experience, that there are other jobs in the national economy that the claimant can perform. *See Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (citing *Reed v. Sullivan*, 988 F.2d 812, 815–16 (8th Cir. 1993)).

To qualify for disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a claimant is disabled, the ALJ follows a five-step process promulged by the Commissioner. *See* 20 C.F.R. § 404.1520. Specifically, the ALJ considers:

> whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)). Relevant to this order, step four requires the ALJ to assess the claimant's past relevant work to determine whether the claimant can perform a job the claimant has done in the past. 20 C.F.R. § 404.1560(b) (2024).

C. *Treating Physician*

"The ALJ must give 'controlling weight' to a treating physician's opinion if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" *Papesh*, 786 F.3d at 1132 (quoting *Wagner v. Astrue*, 499 F.3d 842, 848–49 (8th Cir. 2007). Even if not entitled to controlling weight, a treating physician's opinion "should not ordinarily be disregarded and is entitled to substantial weight." *Papesh*, 786 F.3d at 1132 (quoting *Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir. 2007). The regulatory framework requires the ALJ to evaluate a testing source's opinion in consideration of factors such as length of treatment, frequency of examination, nature and extent of the treatment relationship, support of opinion afforded by medical evidence, consistency of opinion with the record as a whole, and specialization of the treating source. *See* 20 C.F.R. § 404.1527(c)(2). "When an ALJ discounts a treating physician's opinion, the ALJ should give 'good reasons' for doing so." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007) (quoting *Dolph v. Barnhart*, 308 F.3d 876, 878 (8th Cir. 2002)).

The Social Security Administration amended and reorganized the regulations and 20 C.F.R. §§ 404.1527 and 416.927 have been superseded by 20 C.F.R. §§ 404.1520c and 416.920c for claims filed after March 27, 2017. *See Seay v. Berryhill*, No. 5:16-CV-05096-VLD, 2018 WL 1513683 at *39 (D.S.D. Mar. 27, 2018). According to new Social Security Administration rules effective March 27, 2017, the ALJ need not grant any medical opinion controlling weight, regardless of whether the opinion comes from a treating, examining, or consulting physician. 20 C.F.R. § 404.1520c. Instead, the ALJ must evaluate medical opinions according to 5 factors: (1) Supportability, (2) Consistency, (3) Relationship to the claimant, which includes (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v)

8

examining relationship; (4) specialization, and (5) other factors. *Id*. According to the rule, supportability and consistency are the most important factors and must be addressed by the ALJ in his or her decision. *Id.* Thus, while the new rules do not dictate the weight the ALJ is to ascribe to any given medical opinion, the ALJ is required to explain why she finds a medical opinion to be persuasive or not. *Dornbach v. Saul*, No. 4:20-CV-36 RLW, 2021 WL 1123573 at *3 (E.D. Mo. Mar. 24, 2021). Therefore, the old standard that "when an ALJ discounts a treating [source's] opinion, she should give good reasons for doing so," still applies. *Davidson*, 501 F.3d at 990.[1]

### D. *Credibility*

In determining whether to fully credit a claimant's subjective complaints of disabling pain, the Commissioner engages in a two-step process: (1) first, the ALJ considers if there is an underlying impairment that could reasonably produce the claimant's symptoms; and (2) if so, the ALJ evaluates the claimant's description of "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit" the claimant's ability to work. Soc. Sec. Rul. 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, Social Security Ruling 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01. In the second step of the analysis, in recognition of the fact that "some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence[,]" an ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information

---

[1] This Court reserves judgment on how the new rules interact with long held case law precedent outlining the substantial weight due to the medical opinions of treating physicians, as the result would be the same in this case no matter which rules apply

provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at 14168.

To determine the intensity and persistence of an individual's symptoms, the ALJ evaluates objective medical evidence, but "will not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled." *Id.* However, the ALJ must "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id.* at 14169. If an ALJ cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then he or she must carefully consider other evidence in the record—including "statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms, including agency personnel, as well as the factors set forth in [the Social Security] regulations"—in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms. *Id.*

Social Security Ruling 16-3p also provides:

> We will consider an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed when evaluating whether symptom intensity and persistence affect that ability to perform work-related activities for an adult or the ability to function independently, appropriately, and effectively . . .. Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.

*Id.* at 14170.

"[The Eighth Circuit Court of Appeals] has repeatedly stated that a person's ability to engage in personal activities such as cooking, cleaning or a hobby does not constitute

substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) (citing *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998)). Subjective allegations of disabling pain can be discredited if the claimant has only occasionally followed medical treatment or taken prescribed medications. *Singh*, 222 F.3d at 453.

> Those factors include:
>
> 1) Daily activities; 2) The location, duration, frequency, and intensity of pain or other symptoms; 3) Factors that precipitate and aggravate the symptoms; 4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7). Any other factors concerning an individual's function limitations and restrictions due to pain or other symptoms.

*Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (stating, "A claimant's subjective complaints may be discounted if there are inconsistencies in the record as a whole.").

E. *Vocational Expert's Testimony*

In the fourth step of the sequential analysis, the ALJ considers whether a claimant's impairments keep a claimant from doing past relevant work. 20 C.F.R. § 404.1520(e). A claimant's RFC is the most that one can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). The claimant is not disabled if the claimant retains the RFC to perform: "1. The actual functional demands and job duties of a particular past relevant job; or 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996) (quoting Soc. Sec. Ruling 82-61). During this step, an ALJ may consider the vocational expert's testimony when determining the claimant's RFC. *Wagner*, 499 F.3d at 853–54. The ALJ often asks the vocational expert a hypothetical question to help determine whether a sufficient

11

number of jobs exist in the national economy that can be performed by a person with a similar RFC to the claimant. *Guilliams*, 393 F.3d at 804.

## DISCUSSION

A. <u>Mental Health Claims</u>

Hamlin first argues that the ALJ erred in his analysis of her mental health claims. According to Hamlin, the ALJ failed to set forth any reasons why he chose not to explain why he omitted Dr. Panchal's evaluations of Hamlin's moderate medical problems from the RFC. The symptoms and illnesses discussed above bear this out. Further, the evidence shows that Hamlin was a rape victim, was abused, and saw members of her family after they were murdered. Filing No. 12-1 at 347. Hamlin had symptoms of PTSD, anxiety, and depression, including nightmares, flashbacks, intrusive thoughts, visual hallucinations, poor concentration, impaired memory, and isolation. *See, e.g., id.* at 319–22, 347, 369–77. She was a self-harm person and a dissociative cutter. In his opinion, Dr. Panchal opined that Hamlin would miss four days per month of work and be off task 25% or more during the day. Filing No. 15-1 at 235. He determined that she was limited to the following mental RFC:

> The claimant is able to apply common sense understanding to carry out detailed, but uninvolved instructions in the performance of simple, routine and repetitive tasks in a work environment with no fast-paced production requirements involving only simple, work-related decisions and with only occasional judgment and workplace changes. The claimant can occasionally respond to and have interaction with supervisors, coworkers, and the general public.

Filing No. 11-2 at 21.

The Court finds that the ALJ failed to explain why he discounted the moderate limitations in Dr. Panchal's opinion. The ALJ must do so. *See Keyes v. Saul*, No. 8:18CV569, 2020 WL 248727 at *5 (D. Neb. Jan. 16, 2020) ("The ALJ, without comment, did not include the limitation that Keyes needs 'additional time to read print'"). "An RFC 'assessment must

always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.'" *Keyes*, 2020 WL 248727 at *5 (quoting SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996)); *see Mackling v. Saul*, No. 8:20CV347, 2021 WL 2982111 at *7 (D. Neb. July 15, 2021) ("An ALJ 'must minimally articulate his reasons for crediting or rejecting evidence of disability.'") (quoting *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997)).

In addition to the many limitations discussed herein, the moderate limitations at issue include (1) a moderate limitation in the ability to understand and remember very short and simple instructions; (2) a moderate limitation in the ability to carry out detailed instructions; and (3) a moderate limitation in the ability to make simple work-related decisions. *See* Filing No. 15-1 at 235–36. The ALJ found that Hamlin could carry out detailed instructions, but Dr. Panchal found otherwise.

The ALJ determined that Hamlin could work as a kitchen helper, counter supply worker, and laborer stores without addressing the opinion of Dr. Panchal, all considered Level 2 jobs under the Occupational Dictionary. The Eighth Circuit has determined that a claimant must be able to "'[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions' and to '[d]eal with problems involving a few concrete variables in or from standardized situations.'" *See Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 558 (8th Cir. 2018). A thirty percent reduction in the ability to carry out detailed instructions and to understand and remember very short and simple instructions was inconsistent with the jobs the ALJ found Hamlin could perform at step five for Level two jobs. *See Aguirre v. Comm'r of Soc. Sec.*, No. 8:20CV246, 2021 WL 3552383 at *12 (D. Neb. Aug. 11, 2021) (finding a limit to simple instructions inconsistent with the ability to perform reasoning level two work).

13

The ALJ did not cite his reasons for ignoring Dr. Panchal. The Court notes the AJL's reference to general status findings at selected visits to the exclusion of the specific diagnostic findings of the treating physician. Such an approach is not supported by the specific diagnosis by each treating physician. The record clearly supports a finding that the treating physicians' evidence and records support a finding of disability and inability to work. The ALJ's decision in that regard is not supported by the evidence, and the findings of the onetime administration consultant clearly are not supported by the evidence.

### B. *Subjective Severity of Complaints Regarding Mental Health*

Next, Hamlin contends that the ALJ erred in finding the severity of Hamlin's mental health subjective complaints. The vocational expert testified that needing to work in isolation or being unable to concentrate for two hours at a time would preclude competitive employment. Filing No. 11-2 at 57–58. The ALJ concluded Hamlin could perform within the following RFC:

> The claimant is able to apply common sense understanding to carry out detailed, but uninvolved instructions in the performance of simple, routine and repetitive tasks in a work environment with no fast-paced production requirements involving only simple, work-related decisions and with only occasional judgment and workplace changes. The claimant can occasionally respond to and have interaction with supervisors, coworkers, and the general public.

Filing No. 11-2 at 21. The ALJ indicated that "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. at 22. The decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated." SSR 16-3p, 2016 WL 1119029 at *9.

14

The evidence of disability in this case is overwhelming. The ALJ's decision is clearly not supported by substantial evidence. Hamlin has had mental health issues since her early childhood. She has been on a number of mental health medications over a period of years. The ALJ failed to give appropriate consideration to Dr. Panchal's diagnosis, and the Medical Source Statement. The ALJ did not show Hamlin would be able to work during any 12 month period of time, or that she could reasonably be expected to work an 8 hour day, 5 days a week, with reasonable accommodations. The ALJ made conclusory statements there were not supported by the evidence.

"Because the ALJ failed to appropriately credit the medical evidence and [Hamlin's] testimony of disabling limitations, the ALJ presented a hypothetical to the vocational expert that did not accurately reflect [Hamlin's] impairments and limitations. The vocational expert's opinion therefore does not constitute substantial evidence to satisfy the Commissioner's burden." *Gebert v. Kijakazi*, No. 8:23CV289, 2024 WL 665088 at *10 (D. Neb. Feb. 16, 2024). The clear weight of the evidence points to a conclusion that Hamlin is clearly disabled. "Where further hearings would merely delay a receipt of benefits, an order granting benefits is appropriate." *Hutsell v. Massanari*, 259 F.3d 707, 714 (8th Cir. 2001) (quoting *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir. 1984).

Accordingly, IT IS ORDERED THAT:

1. Plaintiff's motion to reverse the Commissioner, Filing No. 16, is granted.
2. Defendant's motion to affirm the Commissioner, Filing No. 18, is denied.
3. This case is hereby remanded for an award of benefits.
4. The Plaintiff shall file a motion for attorney fees, if she so desires, within 30 days of the date of this Memorandum and Order.

15

5. A separate judgment will be filed in conjunction with this Memorandum and Order.

Dated this 3rd day of March, 2025.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge